Levine, J.
(dissenting). I respectfully dissent. The salient facts of this case are not in dispute. Petitioner taught the class of a permanent Board of Cooperative Educational Services (BOCES) teacher named Peter Meyers from November 1989 to the end of the 1990 spring term. During the early part of that period, she lacked certification to be appointed as a permanent teacher, having not yet passed the National Teachers’ Examination. Meyers’s absence from his regular classroom was due to an indeterminate assignment, which could have ended at any time. Petitioner’s status for all of her service in replacing Meyers during the 1989 fall term and until March 21 of the 1990 spring term was as a per diem substitute special education teacher. On that latter date, she was appointed as a regular substitute teacher, filling a formal vacancy attributable to a leave of absence granted another permanent teacher for a definite period ending June 30, 1990.
At the beginning of the fall 1990 term, petitioner resumed her status as a per diem substitute and filled in continuously for another teacher on an indefinite outside assignment, until she received a probationary appointment as a permanent teacher December 17, 1990. BOCES advised petitioner that her probationary period for tenure purposes would end December 17, 1993.
In October 1993 BOCES notified petitioner that she was not recommended for tenure and would be terminated at the end of her probationary period that December. The termination of petitioner’s position within three years of her formal probationary appointment ordinarily would be impregnable to challenge, unless as the majority concludes, she achieved tenure by estoppel. Application of the tenure by estoppel doctrine here is entirely dependent upon whether petitioner’s per diem substitute teaching, at least from the point of receiving teacher certification on February 1, 1990, was eligible to be credited toward her three-year probationary term under the so-called "Jarema Act” (L 1936, ch 680; see, Education Law § 2509 [1] [a]).
Under the Jarema Act, "a teacher who has rendered satisfactory service as a regular substitute” (emphasis supplied) may *121 be credited up to a maximum of two years of such service toward the probationary period. We have upheld statutory interpretations of the Act by the State Commissioner of Education that, minimally, Jarema Act credit requires continuous regular substitute service for one full term (Matter of Lifson v Board of Educ., 66 NY2d 896, 898), and that the service must precede the formal probationary appointment (Matter of Robins v Blaney, 59 NY2d 393, 398-399).
The majority concludes that, because ultimately — as it turned out in fact — petitioner continuously filled in for one teacher in one classroom for the entire 1990 spring school term and continuously for another teacher in the succeeding fall term, until her formal probationary appointment, relieving those teachers constituted regular substitute service, entitling her to some nine months’ Jarema credit toward her probationary term. With such credit, BOCES would have had to make a tenure decision on petitioner months earlier than October 1993, and its failure to do so resulted in tenure by estoppel.
The majority candidly acknowledges that the statutory phrase "service as a regular substitute” in the Jarema Act is ambiguous. The majority purports to find support for its interpretation here from decisions by the Commissioner of Education and by references to the policy foundation for our tenure by estoppel doctrine. I find neither supports the majority’s interpretation. Indeed, I am of the opinion that the majority’s purely retrospective functional criterion for regular substitute service is contrary to the prevailing view of the Commissioner of Education regarding Jarema credit in tenure disputes and is incompatible with the underlying reasons for our tenure by estoppel doctrine. Moreover, it will create uncertainty in a probation/tenure area especially requiring predictability and consistency.
Turning first to the meaning of regular substitute service as interpreted in Commissioner of Education decisions, I agree that the foundational case is Matter of Ducey (65 NY St Dept Rep 65 [1943]). The Ducey opinion is unambiguous in its essential definition of a "regular substitute” under the Jarema Act as "one who takes over the class of another teacher upon a permanent substitute basis; i.e., under circumstances where the regular teacher * * * has been given a definite leave of absence” (id., at 67 [emphasis supplied]). In Ducey the Commissioner explained that service as a substitute "upon a permanent basis” has financial, administrative and budgetary ramifications. It "contemplates a regular assignment for at *122 least a term” (id., at 67 [emphasis supplied]). A "regular substitute teacher should be paid upon an annual basis (as a substitute) and would be entitled to membership in the teachers’ retirement system” (id., at 67).
Of particular significance for purposes of this appeal, the Ducey decision placed a flat restriction on regular substitute appointments. In unmistakable terms, the Commissioner directed that "[b]oards of education may not legally employ teachers upon a regular substitute basis unless there exists the type of vacancy above outlined for such service” (id., at 67 [emphasis supplied]). Thus, a prospective, temporally defined, authorized period of absence of the regular teacher, is not merely "illustrative of factors distinguishing” regular substitute service from itinerant service, as the majority suggests (majority opn, at 116). Such a prospective, fixed period of absence extending for at least a full term is the "type of vacancy” which, according to the Commissioner, is the necessary condition precedent for any legal employment of a teacher as a regular substitute (Matter of Ducey, supra). It is self-evident that a retrospective determination of service as a regular substitute for Jarema tenure purposes, because the permanent teacher’s indefinite absence happened ultimately to extend to a term or more, is entirely incompatible with the requirement of Ducey that the appropriate type of vacancy must exist at the inception of employment for Jarema tenure credit to be achieved.
The foregoing is not undercut by the statement of the Commissioner of Education in Ducey, so heavily relied upon by the majority (see, majority opn, at 116), that tenure seniority would not be defeated by the absence of a formal assignment of the substitute for a definite term, if in fact that person "taught regularly during the term” (Matter of Ducey, supra, at 67). Whether substitute service is regular or itinerant under Ducey remains dependent on the nature of the absence of the substituted-for teacher. The Commissioner in Ducey merely held that if the type of vacancy is presented which permits the lawful employment of a regular substitute (i.e., resulting from a definite leave of absence), Jarema credit cannot be avoided, even for a per diem substitute teacher, if that person actually filled the position for the requisite period.
Succeeding Commissioners have adhered to Ducey’s essential concept of regular substitute service for tenure calculation purposes as service in replacement of a teacher on a leave of absence prospectively fixed for at least a full school term. As recently as 1995, the Commissioner of Education expressly *123 cited to the Ducey standard as an alternative ground for denying tenure status (see, Appeal of Czajkowski, 34 Ed Dept Rep 589, 592). It is noteworthy that the definite leave of absence requirement was reaffirmed in that tenure case, although much earlier the Commissioner modified Ducey in the context of seniority and salary claims, adopting a functional approach similar to that of the majority here (see, Matter of Nuzzi, 8 Ed Dept Rep 97, petition dismissed sub nom. Matter of Board of Educ. v Nyquist, 60 Misc 2d 99; Matter of Matera, 17 Ed Dept Rep 459). However, the Commissioner has repeatedly recognized that different considerations continue to apply when regular substitute service is being considered for tenure purposes (see, Appeal of Carey, 31 Ed Dept Rep 394; Matter of Crandall, 20 Ed Dept Rep 16).
Matter of Artale (13 Ed Dept Rep 84) and Matter of Waterman (13 Ed Dept Rep 68) cited by the majority (majority opn, at 116-117) are not precedents to the contrary and do not signify any abandonment of the Ducey requirement that a regular substitute must replace a teacher on a "permanent substitute basis; i.e., * * * where the regular teacher * * * has been given a definite leave of absence” (Matter of Ducey, supra, 65 NY St Dept Rep, at 67). In Artale, the petitioner substituted for a teacher on a maternity leave, an example of definite leave referred to in the Ducey decision. And in Waterman, the circumstances under which the regular teacher’s absence took place are not described. Thus, both cases may stand for nothing more than the Ducey dictum that, if the appropriate type of durationally definite vacancy exists for appointment as a regular substitute, tenure credit for continuous service of at least one term cannot be avoided.
I also am of the view that imposing tenure by estoppel through a retrospective determination of regular substitute service, based entirely on continuous in fact substitute teaching for a term, is actually inconsistent with the principles and policies giving rise to that doctrine. The essential teaching of our tenure by estoppel cases is that a Board of Education should get no more, and no less, than the full time span provided by statute for a probationary period, within which to assess the competence of a probationary teacher for appointment to a permanent position. Thus, in Matter of McManus v Board of Educ. (87 NY2d 183), we held that a school board could not manipulate the appointment process to extend the probationary period beyond three years, by initially assigning the petitioner as an "acting principal” to perform the duties of *124 Middle School Principal after a vacancy in that position had occurred. The McManus decision emphasized the equitable underpinning of the tenure by estoppel doctrine, whereby the drastic remedy is imposed "when a school board accepts the continued services of a teacher or administrator, but fails to take the action required by law to either grant or deny tenure” prior to the end of the three-year probationary period (id., at 187). Likewise, in Ricca v Board of Educ. (47 NY2d 385), we said:
"[A] school district may not artificially increase the length of the probationary period established by State law, either directly or indirectly by unduly delaying the formal appointment of a teacher to a particular position which that teacher in fact fills” (id., at 392).
The corollary to the principle that a probationary term may not be extended beyond the statutory period is that a school board is entitled to the full period provided by law for determining whether to grant tenure to a probationary teacher. This requires, in the first instance, that there be an open position in that title, to which a formal appointment can actually be made before tenure by estoppel can be imposed for the delay in making the formal appointment. In other words, a Board of Education cannot be estopped from denying tenure credit for a period during which it could not make a probationary appointment. As we pointed out in Ricca (supra), the objectionable conduct of the school district was that,, despite the fact that the petitioner was eligible for formal appointment "respondents delayed some seven months before making that appointment, although, as is clear from the record, there did exist an available position, namely, that in which he himself was serving as a regular substitute and to which he eventually was appointed” (47 NY2d, at 392 [emphasis supplied]). Again, in McManus (supra), we relied upon the fact that the "[petitioner was filling a position left vacant by the termination of the prior Middle School Principal” (87 NY2d, at 189 [emphasis supplied]), and, thus, could not be considered as merely performing substitute service.
Affording a Board of Education a genuine opportunity to use the full probationary time period under the statute to make the tenure decision also means that legislative provisions giving tenure credit for categories of service before the beginning of a formal probationary appointment (such as under the *125 Jarema Act) are to be strictly construed and not extended by expansive judicial interpretation in ruling on a claim of tenure by estoppel (see, Matter of Carpenter v Board of Educ., 71 NY2d 832, 834; Matter of Roberts v Community School Bd., 66 NY2d 652, 656).
Moreover, we have upheld a restrictive construction of the Jarema Act by the Commissioner of Education, as rationally based, "because it is intended to preserve distinctions between regular and substitute service and to thereby limit claims of tenure by estoppel inadvertently acquired” (Matter of Robins v Blaney, supra, 59 NY2d, at 399).
These considerations militate against applying tenure by estoppel here by giving Jarema Act tenure credit to petitioner for the period in which she was substituting on a per diem basis for a teacher on an indefinite assignment outside of the classroom. First, as Ducey and its progeny show, the concept of regular substitute service for tenure purposes contemplates the existence of a vacancy, temporary but of a definite duration, approved by the Board of Education as a leave of absence of the substituted-for regular teacher. It follows that, without the existence of an administratively fixed leave of absence of the regular teacher for a term or more, no appointment of petitioner as a regular substitute could have been made here, and respondents should not be estopped from denying tenure credit to petitioner for a period in which they were without legal power to employ her as such. The policy identified by the majority, to "discourage a board’s use of technical obstacles and manipulable labels” to deny probationary tenure credit (see, majority opn, at 118), is only implicated when a true probationary appointment could have been made. Hence, the majority’s policy concerns are inappropriate to the disposition of this appeal.
By the same token, employing a retrospective, functional test which awards tenure credit for substitute service merely if, ultimately, there had been continuous substitution in the same classroom for a full term or more, deprives both a Board of Education and the probationary teacher of the full period fixed by statute for a proper assessment of educational competence of the appointee.
Thus, we should adhere to the Ducey interpretation of the Jarema Act which equates "service as a regular substitute” (Education Law § 2509 [1] [a]), for tenure credit purposes, with substitution for a regular teacher on a definite leave of absence. *126 That interpretation is appropriate because "it is intended to preserve distinctions between [regular and itinerant] substitute service and to thereby limit claims of tenure by estoppel inadvertently acquired” (Matter of Robins v Blaney, supra, 59 NY2d, at 399). It is entirely consistent with the principles of equity underlying tenure by estoppel and it also promotes predictability of result in tenure disputes and puts teachers and administrators on immediate notice of when Jarema Act credit begins.
For all of the foregoing reasons, I would affirm the order of the Appellate Division dismissing the petition.
Judges Titone, Bellacosa, Ciparick and Wesley concur with Chief Judge Kaye; Judge Levine dissents and votes to affirm in a separate opinion in which Judge Smith concurs.
Order reversed, etc.